J. FRANK BALL, Guardian of Thomas M. Kane and James M. Kane *vs.* JAMES H. KANE, Executor of Michael Kane, Deceased.

*Issue from Register—Evidence.*

1.  Testimony as to the effect of the use of alcoholic liquor upon the testator's mind is admissible as affecting his testamentary capacity; but such evidence must be brought down to and connected with the time of making the will.

2,  Statements made by the testator to another, two or three days after making the will, in reference to how it was made ( viz: " I did not make it; Jimmie and the old woman made it" ), are admissible in evidence as throwing light upon the mental condition of the testator at the time of making the will.  Such statements, however, are not admissible to prove any fact which would be in the nature of a revocation, or to show the fact of undue influence.

3.  What constitutes in law a sound and disposing mind and memory in a testator.

4. The burden of showing an unsound mind in the testator rests upon the person attacking the validity of the will, and the testimony must relate to the time of its execution. If, however, insanity is once established, the burden shifts, and it devolves upon those supporting the will to show that insanity did not exist at the time the will was made.

5. Peculiar weight is to be given to the testimony of testamentary witnesses.

6. The test of undue influence is, is it the will of the testator, or that of a person controlling his will? Unless it is the substitution of the will of another for that of the testator, the influence or persuasion will not vitiate a will.

7. When the objection to the will is that long continued habits of intoxication have gradually impaired the mind and destroyed the memory of the testator and thereby deprived him of testamentary capacity, it must be of such a character as to deprive him of judgment and reason, and must exist at the precise time of the execution of the will. The same is true of *delirium tremens* or any other mental or physical infirmity going to testable incapacity.

(*November 30, 1897.*)

LORE, C. J., and SPRUANCE and BOYCE, J. J., sitting.

*William T. Lynam* for propounders.

*J. Frank Ball* and *Herbert H. Ward* for caveators.

Superior Court, New Castle County, November Term, 1897.

ISSUE FROM REGISTER OF WILLS (No. 163 to Sept. T., 1897), to determine whether the paper writing bearing date February 12th, 1892, signed by Michael Kane and attested by John S. Rossell, Michael Hession and William H. Holland, is or is not the last will and testament of Michael Kane, deceased.

At the trial, counsel for the caveators asked the witness William B. Carswell if he knew Michael Kane's drinking habits.

*Mr. Lynam*, for propounders, objected to the testimony as irrelevant ; his contention being that it must be confined to the *factum*, of about the time the will was made ; that under the authorities it was not competent for the caveators to go back over an extended period of time and prove the drinking habits of the testator.

*Buswell on Insanity, 369; Pierce vs. Pierce, 38 Mich., 418.*

The counsel for caveators stated that they could prove that the testator had been for a number of years preceding the making of the will in either a partially, or an entirely intoxicated condition ; that such habits continued down to the time of the making of the will and until his death; their contention being that such long and constant use of alcohol had produced such a weakening effect upon the testator's mental capacity as to render him incapable of transacting business generally, and, therefore, without testamentary capacity, or at least susceptible to undue influence.

*Duffield vs. Morris' Ex'rs., 2 Harr., 381.*

LORE, C. J :—We think this testimony is admissible. It is the effect of the use of alcoholic liquors upon the testator's mind that the caveators seek to prove. Whether they prove it or not is another matter ; but it is to be brought down and connected with the time of the making of the will, otherwise it has little or no effect.

SPRUANCE, J :—Barring any nice inquiry as to whether the physician knew in fact the condition of the man's mind at the time the will was made, about which there is some little doubt, yet when he did see him last, which it seems would be not very far from the time when the will was made, his testimony was that then and prior to that time his mind was in a weakened state and impaired, and in his opinion it was produced by the use of intoxicants. So that the purpose is not to prove that he was drunk when he made this will, or when he gave the instructions, but that in this man's life there was that which would support the theory or position as to how that state of mind came about, to wit : by the use or abuse of the use of intoxicants.

I think the testimony is competent. Of course I would not let that spread over too much time, but it seems to me you could prove that to be his habit and the degree to which it ran.

The witness, Michael Maloney, was asked by the counsel for the caveators what conversation, if any, he had with Michael Kane with reference to his will two or three days after the execution of the same, the statement of the testator sought to be introduced being as follows : " I did not make it ; Jimmie and the old woman made it."

*Mr. Lynam*, for the Propounders, objected to the question as immaterial. The object of the Caveators was evidently to prove undue influence by the declarations of the testator after the execution of the will, which was clearly inadmissible.

*Redfield on Wills, 542–547; Jackson vs. Kniffin, 2 Johnson, 30; 1 Kernan's Reports, (11 N. Y.), 160.*

Counsel for Caveators stated that the evidence was offered to show the mental contition of the testator at the time of the making of the will, from the conversation had with the witness regarding the making of said will, and for that purpose it was clearly admissible.

*Redfield on Wills, \*553; Rusling vs. Rusling, 36 New Jersey Equity Reports, 603; Shalor vs. Bumpstead, 99 Mass., 121; McTaggart vs. Thompsou, 14 Penn. State, 151; In Re Clark, 40 Hun. (Supreme Court of N. Y.), 237; Canada's Appeal from Probate, 47 Conn., 463; Robinson vs. Hutchinson, 26 Vermont, 37 and 45; Bates vs. Bates, 27 Iowa, 113; Potter vs. Baldwin, 133 Mass., 427; Reynolds vs. Adams, 90 Ill., 146.*

LORE, C. J:—We understand that this is an offer on the part of the parties resisting the will to prove that the testator said, shortly after making the will, "I did not make it; Jimmie and the old woman made it;" that the offer of the testimony is not to prove the fact of undue influence or anything that would be in the nature of a revocation of the will, but to show the mental condition of the testator at the time of making the will.

After a careful examination of the authorities, and consider-ing the rule or the principle underlying the question, a majority of the Court think that this testimony ought to be admitted. The line seems to us to be quite clearly drawn, that after a man has formally made his will, a formal written instrument signed and executed by him, he may not in effect by any subsequent conver-sation revoke that will, nor would his evidence in any way be ad-missible in order to prove any fact which would be in the nature of a revocation.

But where a declaration is made within a reasonable time, where one ground of objection to the will is mental incapacity, subject to undue influence, the declaration made shortly after the

making of the will, that "I did not make it; Jimmie and the old woman made it," the majority of the Court think ought to go to the jury for what it is worth; that the fact that a man who one day makes a formal instrument, and the next day says to somebody he did not do it, ought to go the jury, being so nearly connected with the time, in order to throw light upon his mental condition at the time of the making of the will.

*Jarman* has expressly stated that "Evidence may be given of the state of the testator's mind and of his bodily health, both before and after the time when the will was made; still, such evidence is no otherwise to be regarded than as shedding light upon the condition of his mind at that time."

The majority of the Court think that if a man should make such declarations a little time after the making of the will, it is a fact which would have relation to the mental condition of the testator at the time of making the will; that it throws light upon his mental condition at that time, and it goes to the jury for what it is worth to show his mental condition at that time.

We think that probably the position taken has grown out of the fact that the Court has, in some cases, endeavored to relieve against the particular hardship and has not followed the broad rule that where the declaration has been made within a reasonable time it is admissible to throw light upon the mental condition at the time of making the will, and that it ought to go to the jury for what it is worth to show whether at the time of making the will the man's mind was impaired and susceptible to undue influence.

BOYCE, J:—I, too, regret that the Court are divided upon a question of such importance as the one now presented for our consideration and determination.

If it were now sought to introduce in evidence the simple, bald and naked declarations of the testator (independently as it were) made subsequently to the execution of the paper writing purporting to be his last will and testament, and without any evidence previously offered, showing or attempting to show either insanity or imbecility of mind of the testator, and for the purpose of working a revocation of the testator's will, or to attack its valid-

ity on the ground of duress or undue influence, then the Court
agree that such declarations should not be admitted in evidence.
We understand that the counsel seeking the admission of this
testimony himself admits that any such declarations are not evi-
dence to go to the jury for the purpose of attacking the validity
of the will.    They are admitted for another purpose which I will
now attempt to show.    In cases of this character where testimony
has been offered, as in this case, to show a want of testamentary
capacity of the testator, the sufficiency of which is, of course, for
the jury to determine, it does seem from well considered cases,
founded upon sound reasoning and judgment, that subsequent
declarations of the testator, made near the time of making his
will (the declarations sought to be offered in this case were made,
we are informed, within two or three days thereafter) may be
given in evidence to throw light upon the testamentary capacity
of the testator and to aid the jury in determining the mental con-
dition of the testator, and for this purpose only.    The admission of
this testimony is not sought, as we understand, nor do a majority
of the Court allow it to go to the jury as evidence of the fact of a
revocation of the will, or of duress, or of undue influence, or of
anything else as a fact, attacking the validity of the will.    But
we admit it as any other evidence which in the proper discretion
of the Court may be admitted when offered affecting the mental
condition of the testator, and as I have said for the purpose of
throwing light upon the real mental condition of the testator.

The case in *1 Kernan* (*11 N. Y. Court of Appeals*), *160*, as
well as the case of *Reynolds vs. Adams*, *90 Ill.*, *146*, leaves very
little room for doubt as to the admissibility of the testimony.
They are well considered cases, and they satisfy my mind that
this testimony should be allowed to go to the jury for the purpose
already stated.

In the last mentioned case, and on page 148, it is said:
"Much of the difficulty, however," (meaning in cases of this
character) "had arisen from the omission to distinguish with
sufficient clearness between the different objects for which the
declarations of the testator may be offered in evidence in cases in-
volving the validity of their wills."    And a distinction is shown
between offering the testimony for the purpose of a revocation of

the will, or to impeach the validity thereof for duress or undue influence, and offering it to show the mental capacity of the testator. Indeed, after a careful examination of the authorities, the Court said: ''The rule deducible from the cases on this subject is, that while the declarations of a testator are not admissible to show an express revocation of his will, or the fact it was executed under duress or from undue influence, they may nevertheless be proved. and used to show his mental condition at the time of the execution of the will, or so near the time the same state of affairs must have existed.''

In *McTaggart vs. Thompson*, *14 Pa. St. Reports*, *149*, "it was distinctly ruled that declarations of a testator, though made after the execution of the will, are admissible in such cases as evidence of imbecility of mind.''

I think the testimony should be admitted.

SPRUANCE, J., (dissenting):—I regret that I am not able to agree with a majority of the Court in the admission of this testimony.

. This is a question of first impression in Delaware. It has been considered in other courts, and the decisions are conflicting. It is admitted that testimony of this character is never admissible for the purpose of proving the fact of undue influence. When testimony of this kind has been admitted, it has been on the ground that it showed or tended to show the mental condition of the testator at the time he made the instrument. Where the alleged character of the mental disorder is of a continuing character, light as to the testator's mind when he made the instrument is often given by testimony as to his mental condition before and after making the instrument. That is the only justification of the introduction of such testimony. The testimony objected to is the following conversation with Kane a few days after the execution of his alleged will.

'' One night he and I were in the house getting our supper, and he said to me, ' Let's go down as far as Holland's and get a glass of beer.' I said 'All right.' And we walked down through the yard, and after we got to the front pavement he said to me: ' My will is made.' I said, ' Is that so ?' He said, ' Yes,' and he said, ' I didn't make it; Jimmie and the old woman made it.' ''

" That is all that passed between me and him. That is just what he said, " Jimmie and the old woman made it."

In other words, it was wholly a declaration by the testator that the will which he had made was made by the influence of his wife and son. There was no failure to recollect what the will contained; no statement of anything from which any inference could be drawn as to his mental condition, but simply a naked and bald statement that the will was really made by them meaning by their influence. As before stated it is agreed that this testimony cannot be admitted to prove that fact of undue influence, but it is insisted that it may be admitted to prove mental incapacity when the will was made. To my mind, it neither proves it nor approximates towards the proof of it, and that to admit it would be to resort to a mere subterfuge to get before the jury a statement to produce an effect which the law says cannot be produced by such testimony. Upon examination of the cases cited in support of the admission of this testimony, it will be found that a number of them were cases in which the declarations of the testator, that he had made the will under undue influence, were accompanied by other statements which clearly indicated unsoundness of mind. Under such circumstances it was clearly proper to admit the whole of the conversation.

*In re Waterman, 1 Kernan, 157;* and *In re Clark, 40 Hun., 237,* were cases of this character.

In addition to the statements of the testators as to undue influence, there were statements as to what the wills contained which were not there, showing that they were not capable of remembering what was in the wills.

In *McTaggart vs. Thompson, 14 Pa. St., 151,* the testator told what disposition of his property was made by his will, and said that he had ruined his family and had been imposed upon by certain persons. The Court, commenting on this, said in effect, that a man must be out of his mind who would say that by making a will he had ruined his family, as any one of sound mind would know that the evil might be remedied by destroying the instrument.

If the statement of the testator after the making of the will

does not throw light on his mental capacity when the will was made, it ought to be rejected.

Among the cases which support this view is that of *Jackson vs. Kniffin, 2 Johns., 30.*

In that case the testator was an aged man, over eighty years old. The plaintiff called several witnesses to prove that the will was obtained by duress. It appeared that the testator was possessed of considerable real and personal property. He uniformly, and in the most earnest manner, declared the instrument was not his will, and that he had been forced to execute it or he would have been murdered if he had not, and called upon those present to bear witness, that said instrument was not his will, that it had been extorted from him through fear of being murdered and that his desire was to make equal distribution among his children, etc. All of this was rejected by the Court.

The testimony objected to in this case cannot be admitted for the purpose of proving undue influence, and that is all there is of it; and it does not tend in any degree to prove the mental capacity of the testator either at the time he made the declarations, or at the time he made the will.

I am, therefore, very clearly of the opinion that it would be safer for us to adhere to the ancient rule, which excludes such testimony.

### PROPOUNDERS' PRAYERS.

The Propounders prayed the Court to charge the jury as follows:

*First.* What constitutes a sound disposing mind and memory in contemplation of law.

If the testator is able to understand that he is disposing of his estate by his will, and to whom he is disposing of it, however weak his intellect may be, he is able and competent to make a valid will. In a word, were his mind and memory sufficiently sound to enable him to know and understand the business in which he was engaged at the time when he executed his will?

*Jamison vs. Jamison, 3 Houst., 122; Lodge vs. Lodge, 2 Houst., 423; Sutton vs. Sutton, 5 Harrington, 459; Duffield vs. Morris's Executors, 2 Harrington, 375; Ethridge vs. Bennett's Executors, 1 Del. Term Rep.. 15; Cowdrey vs. Cowdrey, 1 Houst., 273.*

*Second.* The presumption of law is in favor of the capacity of the testator to make a will. The burden of showing want of capacity rests on those who oppose the will, and it is incumbent on them to show such incapacity by satisfactory proof.

*Cowdrey vs. Cowdrey, 1 Houst., 269; Lodge vs. Lodge, 2 Houst., 418.*

*Third.* The jury in determining the question of capacity, must look to the time when the will was executed, to ascertain the state and condition of the testator's mind; if he has sufficient capacity at that particular time, his prior or subsequent incapacity amounts to nothing, and the will must stand.

*Jamison vs. Jamison, 3 Houst., 123; Lodge vs. Lodge, 2 Houst., 423.*

*Fourth.* The testimony of the subscribing witnesses and their opinion as to the soundness or unsoundness of the testator's mind at the time of making the will, is entitled to great weight with the jury.

*Ethridge vs. Bennett's Executors, 1 Del. Term Rep., 21; Jamison vs. Jamison, 3 Houst., 121.*

*Fifth.* As to the question of undue influence, it must be such influence as amounts to force and coercion, destroying free agency—such an influence as would permit another to substitute his will for the will of the testator.

*Duffield vs. Morris's Executors, 2 Harrington, 384; Sutton vs. Sutton, 5 Harrington, 461; Lodge vs. Lodge, 2 Houst., 424.*

*Sixth.* An influence which is acquired by persuasion or by affection or attachment, or the desire of gratifying the wishes of another is not sufficient to vitiate the will.

*Duffield vs. Morris's Executors, 2 Harrington, 384; Sutton vs. Sutton, 5 Harrington, 461; Lodge vs. Lodge, 2 Houst., 424.*

*Seventh.* The fact that the widow or son or any other of the beneficiaries named in the will was present at the time of the execution of the will, does not throw suspicion on the will.

*Ethridge vs. Bennett's Executors, 9 Houst., 304.*

*Eighth.* To avoid a will on the ground of intoxication, it

must be proven that the testator was intoxicated at the very time of the execution of the will.

*Pierce vs. Pierce, 38 Mich., 412; Duffield vs. Morris, 2 Harrington, 384.*

*Ninth.* The form of insanity produced by long continued habits of intemperance, is either *delirium tremens,* or such a state of fixed and permanent insanity that would be evident at once to every one with whom the party came in contact; this must exist to such an extent as to exclude thought and judgment at the very time the will was executed.

*Duffield vs. Morris, 2 Harr. 384.*

*Tenth.* That the testator had a perfect right to dispose of his property as he thought best.

### CAVEATORS' PRAYERS.

Counsel for the opponents of the will submitted the following prayers:

*First.* Long continued habits of intemperance may gradually impair the mind and destroy the memory and other faculties, so as to produce insanity. A testator cannot have testamentary capacity whose mind has become so impaired from habitual drunkness as to be deprived of judgment and reason.

*Duffield vs. Morris, 2 Harr., 283; 25 A. & E. Encyclo. of Law, 991-2; Cochran's Will, 1 T. B. Monroe, 263.*

*Second.* Where the mind of the testator is, at the time of the execution of his will, enfeebled from any cause whatever, less evidence will be required to invalidate such will on the ground of undue influence, than in the case of a testator possessing an unimpaired intellect; and the feebler the mind of the testator, no matter from what cause, from sickness or otherwise, the less evidence will be required to invalidate his will upon the ground of undue influence.

*Reynolds vs. Adams, 90 Ill., 149; Bates vs. Bates, 27 Iowa, 115-16; Clark vs. Fisher, 1 Paige, 176; Sutton vs. Sutton, 5 Harr., 461-2.*

*Third.* In the case of a weak or weakened mind, the degree of influence necessary to invalidate a will need be only such as is

adequate to control the testator's free agency, and to prevent him from doing as he pleases with his property.

*Redfield on Wills, 516, par. 18 and 19; Chandler vs. Ferris, 1 Harr., 464.*

*Fourth.* In determining the issue presented to the jury in this case, they have the right to consider the circumstances and condition of the testator's family and property, and the claims of particular individuals upon the bounty of the testator, based upon the love and affection of the testator toward them. The jury have also the right to consider the reasonableness or unreasonableness of the provisions of the will in the light of the evidence upon those points. And where the will is unreasonable in its provisions, and inconsistent with the duties of the testator, with reference to his property and family, this of itself imposes upon those claiming under the will the necessity of giving some reasonable explanation of the unnatural character of the will, or, at least, of showing that its character is not the offspring of mental defect, obliquity or perversion.

*Patterson vs. Patterson, 6 S. & R., 55; Clark vs. Fisher, 1 Paige, 176; 1 Redfield on Wills, 515-16, par. 14; Duffield vs. Morris, 2 Harr., 381-2; Sutton vs. Sutton, 5 Harr., 462; Hall vs Dougherty, 5 Houst., 450.*

*Fifth.* If the jury believe from the evidence that the mind and memory of Michael Kane had, by the long continued and excessive use of intoxicants, from successive attacks of *delirium tremens* induced by such use of intoxicants, and by the fall and injury to his head shortly before he made his will, or from any of said causes, become, at the time he executed the will in question, so weakened, impaired and deranged, that he was deprived of the necessary reason, recollection and judgment to dispose of his property by will, in accordance with his own volition, affections and desires, then the jury should set aside this will.

*Sixth.* If the jury believe, from the evidence, that the mind and memory of Michael Kane had, by the long continued and excessive use of intoxicants; from the successive attacks of *delirium tremens* induced by such use of intoxicants, and by the fall and injury to his head shortly before he made his will, or from any

of such or other causes, become, at the time he executed the will in question, so weakened, impaired or deranged, and so devoid of reason, recollection or judgment, that he was incapable of withstanding suggestions or influences adverse to his real desires, will and intentions as to the disposition of his property by such testament, and that there were in fact such suggestions or influences which prevented him from so disposing of his property by his will in accordance with his own volition, affections and desires, then the jury should set aside this will.

LORE, C. J., charging the jury:

Gentlemen of the jury:—The question for you to determine is whether the paper writing bearing date February 12th, 1892, purporting to be the last will and testament of Michael Kane, deceased, is or is not his last will and testament.

"The statutes of this State on the ninth of April, 1873, enabled any person of the age of twenty-one years or upwards, of sound and disposing mind and memory, married women excepted, to make a will as well of real as of personal estate." By act of April 9th, 1873, it was provided, that any married woman of the age of twenty-one years and upwards may dispose of her property, both real and personal, by will. So that on the twelfth day of February, 1892, the date of this will, any person of the age of twenty-one years or upward, of sound and disposing mind and memory had a right to make a will.

It is conceded in this case that the formal execution of this paper writing was had according to law; but it is claimed by those opposing the will that Michael Kane, the testator, at the time of the execution of this paper was not of sound and disposing mind and memory. That by reason of the excessive use of intoxicating liquors for many years before that date, and also from a severe injury received by him in a fall down the stairway of his residence, shortly before the date of the will, his mind was so impaired that he was incapable of making a will; and that in addition thereto he was unduly influenced by his wife and his son James H. Kane in the distribution of his property by that will.

What constitutes a sound and disposing mind and memory

in a testator has been very clearly stated in the decisions of our courts.

In *Chandler vs. Ferris, 1 Harr. 454*, the Court say: "When the testator was capable of exercising thought and judgment and reflection, if he knew what he was about and had memory and judgment," he had testible capacity.

In *Duffield vs. Morris' Ex'r. 2 Harr. 375*, the Court say: "A sound mind is one wholly free from delusion, all the intellectual faculties existing in a certain degree of vigor and harmony ; the propensities, affections and passions being under subordination to the will and judgment, the latter being the controlling power, with a just perception of the natural connection or repugnancy of ideas. Weak minds again only differ from strong ones in the extent and power of their faculties ; but unless they betray symptoms of a total loss of understanding or of idiocy or of delusion they cannot properly be considered unsound. A perfect capacity is usually tested by this, that the individual talks and discourses rationally and sensibly and is fully capable of any rational act requiring thought, judgment and reflection. This is the standard of a perfect capacity ; but the question is not how well a man can talk or reason, or with how much judgment he can act, or with how great propriety and sense he can act ; it is only: has he mind and reason ? Can he talk rationally and sensibly ? Or has he thought, judgment and reflection ? Weakness of mind may exist in many different degrees without making a man intestible. Courts will not measure the extent of people's understandings or capacities if a man be legally *compos mentis*. Be he wise or unwise, he is the disposer of his own property, and his will stands as the reason for his action."

In *Sutton vs. Sutton, 5 Harr. 459*, the Court say testible capacity amounts "to nothing more than a knowledge of what he was about when he made the will, and how he was disposing of his property and the purpose so to do it."

In the *Lodge Will Case, 2 Hous. 418*, the language of the Court is: "If the testator at the time of executing the will was capable of exercising thought, reflection and judgment, knew what he was doing, and how he was disposing of his property, and had sufficient memory and understanding to comprehend the nature

and character of the transaction, he was capable of making a will. Mere weakness of mind or partial imbecility from disease of the body or from age will not render a person incapable of making a will."

In the *Jamison Will Case, 3 Hous. 108*, the Court say of the testator: "If he is able to understand that he is disposing of his estate by will, and to whom he is disposing of it, however weak his intellect may be, he is able and competent to make a will." Such, gentlemen, is testible capacity as defined in our reports.

"Every person is presumed in law to be of sound mind until the contrary is shown, and the burden of showing an unsound mind in the testator rests on the party contesting the validity of the will, and the testimony must relate to the time of its execution."

*Lodge's Will, 2 Houst., 418.*

If, however, insanity is once clearly established, the burden shifts, and it devolves upon those supporting the will to show that insanity did not exist at the time the will was made; the burden, however, does not shift until insanity is so established to your satisfaction by a preponderance of evidence.

In determining the question of capacity, you must direct your minds to the precise time of the execution of the will. In cases like this, courts have been liberal in admitting testimony as to the physical and mental condition of the testator, both before and after the time of the execution of the will; but such testimony is admitted only for the purpose of enlightening your minds, so that you may have the environments of his life, and be able to concentrate your judgment upon that critical moment, and to say in that concentrated light whether at the precise time of the making of the will he was of sound and disposing mind and memory; if he was, then it is a matter of indifference what may have been his condition at any other time.

In determining his condition at that time, you should give to the testimony of the subscribing witnesses to the will such credit as their peculiar relations to, and opportunity of knowing his condition just then, entitle them. The law places them there to speak specially to that point.

When it is claimed that the will is void because of undue

influence, the objection will not avail " unless such influence amounted to a degree of restraint such as the testator was too weak to resist, such as deprived him of his free agency and prevented him from doing what he pleased with his property."

*Duffield vs. Morris, 2 Harr., 375.*

The degree of influence necessary to control the mind of the testator, must depend upon, and be proportioned to the mental and physical strength or weakness of the testator. It is obvious that a man mentally and physically weak is more susceptible to undue influence than one who is strong and healthy.

The influence " must be such as to take away his free will, such as he is too weak to resist, mere solicitation will not be sufficient to vitiate a will made by a person having a knowledge of what he is doing and intending to do it when making it, though his act may be brought about by solicitation or that kind of influence which a disposition to gratify another may produce."

*Sutton vs. Sutton, 5 Harr., 459.*

The test is this: is it the will of the testator or that of a person controlling his will which is expressed in the paper writing? Unless it is the substitution of the will of another for that of the testator, the influence or persuasion, whatever it may be, will not vitiate a will. A testator may listen to the persuasion of a wife and children or others about him ; may regard the ties of affection, and the will be valid, unless his mind and judgment were overborne and controlled by them in the making of the will. The mere fact that such persons are about and in the presence of the testator at the time the will was made does not of itself vitiate the will.

When the objection to the will is that long-continued habits of intemperance have gradually impaired the mind and destroyed the memory of the testator and thereby deprived him of testamentary capacity, it must be of such a character as to deprive him of judgment and reason, and must exist at the precise time of the execution of the will. The same is true of *delirium tremens* or any other mental or physical infirmity going to testible capacity.

Taking the law as we have thus laid it down, you are now to say whether this paper writing is or is not the will of Michael Kane.

In reaching a conclusion you should not be governed by any other consideration than whether he at the time of the execution of the will was of sound and disposing mind and memory. That is to say, that he then knew he was disposing of his property, that he intended so to do, and therein was following the behest of his own mind.

As was stated by the Court during the progress of the trial, declarations made by the testator after the making of the will to the effect that the will was made by or under the influence of other persons, are not to be received as evidence of undue influence, but only as they may throw light upon the mental capacity of the testator when the will was made.

You are not to consider whether it was such a will as you would have made, or such a will as you think he ought to have made, considering all the circumstances of his family and surroundings. For if he was then of sound and disposing mind and memory, he had a right to dispose of his property by will as he pleased, and you may no more substitute your will, or what you would have done for his will, than you may substitute the will of any one of his family for his will.

The law gives a person a right to dispose of his property as he may choose, and he is the judge of how he will dispose of it.

In your deliberations you are to be governed exclusively by the testimony in this case, and may listen to no pleas of sympathy, favor or other considerations. Where testimony is conflicting as it is here you should reconcile it if you can ; but if you cannot reconcile it, then you should be governed by the testimony of those witnesses who, under all the circumstances, you consider most entitled to credit, having regard to the opportunities of the witnesses to know that of which they speak, their apparent fairness or bias, their intelligence, manner and bearing and every other element that goes to a fair estimate of their truthfulness and accuracy.

If, therefore, from the evidence, you believe that on the twelfth day of February, 1892, the time of the execution of this paper writing, Michael Kane was of sound and disposing mind and memory, your verdict should be that that paper writing is his last will and testament ; if, on the contrary, you believe from

the testimony that he was not then of sound disposing mind and memory, your verdict should be that the paper writing is not his last will and testament.

The jury found the paper writing to be the will of Michael Kane.