ANN S. RODNEY *vs.* GEORGE BURTON of J. H., Executor, et al.

1. TRIAL—PROVINCE OF JURY—FOLLOWING INSTRUCTIONS AND EVIDENCE.

A finding of the jury must be based exclusively upon the testimony in the case and the law as declared by the court.

2. WILLS—TESTAMENTARY CAPACITY IN GENERAL.

Any person of the age of twenty-one years or upwards, being of sound and disposing mind and memory, may make a will.

3. WILLS—TESTAMENTARY CAPACITY—BURDEN OF PROOF.

Every person is presumed to be of sound mind until the contrary is satisfactorily shown; but, where incapacity at a time prior to the execution of the will is once clearly established, the burden shifts, and it devolves upon those propounding the will to show that it did not exist when the will was made.

4. WILLS—TESTAMENTARY CAPACITY—EVIDENCE—CONDITIONS PRIOR TO AND SUBSEQUENT TO EXECUTION OF WILL.

Evidence as to the mental and physical condition of testator, both before and after the execution of the will, is admissible on the issue of testamentary capacity when the will was executed.

5. WILLS—TESTAMENTARY CAPACITY—DEGREE.

There are varying grades of mental capacity, ranging from weak to strong. Intellectual weakness alone, or mere weakness of the understanding, whether the result of injury or disease, does not disqualify a person from making a will; and a partial failure of mind or memory is not in itself sufficient ground for setting aside a will. The question is not so much the degree of mind or memory possessed by the testator, as whether he was capable, at the time of executing the will, of exercising thought, judgment, and reflection, and of knowing how he was disposing of his property.

6. WILLS—TESTAMENTARY CAPACITY—WEIGHT OF EVIDENCE.

The question of testamentary capacity must be determined from the facts and circumstances established by the evidence, and in weighing such evidence the jury should carefully consider the integrity of the witnesses, their bias and interest on one side or the other, if any, their intelligence and judgment, and their respective opportunities and powers of observation.

7. WILLS—TESTAMENTARY CAPACITY—ATTESTING WITNESSES.

Subscribing witnesses, being placed by the law around a testator at the

Syllabus.

time of executing his will for the special purpose of judging of his capacity, may testify as to the opinion they formed at the time as to whether he was of sound or unsound mind.

8. EVIDENCE—OPINION   EVIDENCE—TESTAMENTARY   CAPACITY—FACTS FORMING BASIS OF OPINION.

Witnesses other than attesting witnesses to a will cannot testify as to their opinion merely of a testator's capacity, without stating the facts upon which such opinion is founded; and the opinions of medical men are inadmissible, unless the facts upon which such opinions are founded are stated.

9. EVIDENCE—OPINION EVIDENCE—WEIGHT—TESTAMENTARY CAPACITY.

Since medical men are more competent to form an opinion as to testamentary capacity, greater weight will, in general, be given to their opinions than to the opinion of non-medical witnesses.

10. WILLS—TESTAMENTARY CAPACITY—"SOUND MIND".

A "sound mind" is one wholly free from delusions, with all the intellectual faculties in a certain degree of vigor and harmony, and under subordination to the judgment and will; the usual test being whether one can talk rationally and sensibly, and is fully capable of any rational act requiring thought, judgment, and reflection.

11. WILLS—TESTAMENTARY CAPACITY—"INSANE DELUSIONS" OR MONO-MANIA—"UNSOUND MIND".

An "unsound mind" is marked by delusions consisting in the belief of facts which no rational person would believe, and often accompanied by an apparent insensibility to or perversion of natural feelings; but the mere fact that a testator, partially insane, had delusions at the time he made his will, is not sufficient in itself to invalidate the will, unless the delusion was such as to affect the testator's knowledge, memory, and understanding of the extent and nature of his estate, the proper objects of his bounty, and the nature of the testamentary act.

12. WILLS—CONTEST—FEES AND COSTS—FEES OF WITNESSES.

In a will contest, the fees of witnesses subpœnaed by contestant, but not called, will not be taxed as a part of the costs, where they were summoned merely as a convenience to counsel, so that he might learn whether they knew anything about the case, and were not called because they had no knowledge relevant to the issue; but the fees of witnesses summoned by contestant in the belief that they had knowledge relevant to some issue of the case, and as to whom counsel were of such opinion after conferences, but who were not called because in the development of the case it was deemed unnecessary or inexpedient to do so, will be taxed as costs in the case, provided the number is reasonable and no good reason is shown why they should not be taxed.

13. WILLS—CONTEST—FEES AND COSTS—COUNSEL FEES AND EXPENSES—GROUNDS   FOR   ALLOWANCE—"PROBABLE   CAUSE"—"REASONABLE GROUNDS".

Whether a reasonable sum shall be allowed the contestant of a will for counsel fees necessarily incurred in the contest, depends upon the strength and reasonableness of his case, and if there was "probable cause" or "reasonable grounds" for resisting the will, based upon competent evidence, and sufficient to establish a *prima facie* case, and overcome the presumption of law in favor of the will's validity, as well as the formal proof of its execution,

Statement—Charge.

and to justify the court in believing that the paper writing in issue is not the will of deceased, if no other evidence should be produced, the contestant should be allowed such expenses, to be determined by the court in each case upon consideration of the testimony produced by the contestant, without regard to that produced by the propounders of the will, other than the formal proof of its execution; but, though not entitled to such counsel fees, contestant's counsel were entitled to such reasonable and necessary expenses as were incurred in the preparation and presentation of their case.

(*November* 11, 1912.)

PENNEWILL, C. J., and CONRAD and WOOLLEY, J. J., sitting.

*Arley B. Magee* and *James M. Satterfield* for the plaintiff.

*Henry Ridgely*, *William M. Hope* and *George M. Jones* for the defendants.

Superior Court, Kent County, October Term, 1912.

Issue from the Register of Wills *devissavit vel non* by consent of parties. The issue presented, to be tried by a jury in the Superior Court, and the contentions of the parties appear in the charge of the court.

Announcement of rule with respect to taxing fees for witnesses subpoenaed but not called; also for expenses and counsel fees for contestants of the will.

PENNEWILL, C. J., charging the jury:

Gentlemen of the jury:—In this case the validity of an alleged will is contested.

The paper writing in issue, purporting to be the last will and testament of Harriet W. Burton, deceased, was executed on the seventeenth day of June, 1911, and was approved and allowed by the register of wills, after formal proof of its execution, on the eleventh day of August, 1911, the said Harriet W. Burton having died on the eighth day of August, 1911.

A petition for the review of the proof and allowance of said paper writing as the last will and testament of Harriet W. Burton was presented to the register of wills on the —— day of July, 1912, whereupon the register ordered and directed that the following question, to wit: "Whether the paper writing bearing date the seventeenth day of June, 1911, purporting to be the last will and testament of Harriet W. Burton, late of Kent County

and State of Delaware, deceased, is or is not the last will and
testament of said Harriet W. Burton, deceased, be tried before a
jury at the bar of the Superior Court of the State of Delaware,
in and for Kent County."

Such, gentlemen, is the issue you are impaneled to try. The
sole question in the case is whether or not Harriet W. Burton had
a sound and disposing mind and memory on the seventeenth day
of June, 1911.

We will not undertake to state at length the testimony given
by the witnesses. You have been very attentive during the trial;
you are intelligent men, have listened carefully to the witnesses,
and will doubtless remember their testimony with clearness and
accuracy.

[1] You understand, of course, that your finding must be
based exclusively upon the testimony in the case, and the law as
declared by the court. By this and this alone you are to be gov-
erned in reaching your verdict. You should not be influenced by
any feelings of sympathy, favor, prejudice, or any consideration
other than the evidence and the law.

It is undisputed that the testatrix, at the time she executed
the alleged will, was about seventy-six years of age, and physically
very weak; that her son, who was her only child, had died a few
days before that time; that she was, at the time of her death, the
owner of considerable real estate, including a very valuable farm
just south of Dover, and other property; that her nearest relative
was her sister Ann S. Rodney, who is the contestant in this case,
and that George Burton, of J. H., the chief beneficiary under the
alleged will, was a nephew of the testatrix's husband, but not
related by blood to her.

It is claimed by the contestant that Harriet W. Burton was, at
the time she made the alleged will, without testamentary capacity;
that is, of unsound mind and incapable of making a will. In
particular it is contended that she was at that time, and had been
for a considerable period before, afflicted with paranoia, and had
delusions respecting her property and her sister Ann S. Rodney.
The contestant insists that there had never been any serious
difference or trouble between herself and her sister, the testatrix;

that she lived in another state, far from Dover, and did not see her sister for eight years before her death, but had called at her home once during that period and made an unsuccessful effort to see her.

It is claimed by the propounders of the alleged will that Harriet W. Burton was, at the time of making the alleged will, of sound and disposing mind and memory; that although she was physically weak, she was not afflicted with paranoia or any other mental disease, and was free from delusions of any kind. It is also claimed that the relations between the testatrix and her sister, the contestant, were strained and unfriendly at the time the alleged will was made, and had been for some time before, mainly because of a controversy or difference about the division of property.

It is insisted on the one side that the relations between the testatrix and George Burton, the chief beneficiary under the alleged will, had been, for many years prior to the making of the same, very close and friendly; and on the other side it is claimed that there were times when the testatrix did not feel any interest in, or fondness for, the contestant.

[2, 3] Under the law of this state any person of the age of twenty-one years or upwards, being of sound and disposing mind and memory, may make a will. Every person is presumed in law to be of sound mind until the contrary is shown, and the burden of showing an unsound mind in the testatrix to the satisfaction of the jury by competent evidence rests on the party contesting the validity of the will, and the testimony must relate to the time of its execution.

Testamentary incapacity is not to be presumed, but must be satisfactorily shown to the jury by the preponderance or greater weight of the evidence in the case.

If, however, insanity is once clearly established, the burden shifts, and it devolves on those supporting the will to show, by testimony as strong as that required to establish insanity, that it did not exist at the time the will was made; the burden, however, does not shift until insanity is so established to your satisfaction by a preponderance of the evidence.

[4]   In determining the question of testamentary capacity, that is, whether the testatrix was of sound mind, you must direct your minds to the precise time of the execution of the will.   In cases like this, courts have been liberal in admitting testimony as to the mental and physical condition of the testatrix, both before and after the time of the execution of the will; but such testimony is admitted only for the purpose of enlightening your minds, so that you may have the environments of her life, and be able to concentrate your judgment upon the critical moment, and to say in that concentrated light whether at the precise time of the making of the will she was of sound and disposing mind and memory.   If she was, then it is a matter of indifference what may have been her condition at any other time.   *Ball, Guardian, v. Kane's Executor,* 1 *Penn.* 104, 39 *Atl.* 778.

In the case of *Smith v. Smith's Adm'r,* 2 *Penn.* 250, 45 *Atl.* 398, this court said: "The law gives a person the right to dispose of his property as he sees fit, and he alone is the judge of how he will dispose of it.   You are not to consider whether it is such a will as you would have made, or such a will as you think he ought to have made.   If he was possessed of a sound and disposing mind and memory it was his right to dispose of his property by will as he pleased, and with that disposition you have nothing whatever to do."

[5]   There are many varying grades of mental capacity, ranging from weak to strong—from the lowest to the highest degree of intelligence.

Intellectual feebleness alone, or mere weakness of the understanding, whether this condition of the mind be natural or the result of injury, or of disease, does not disqualify a person from making a valid will.   A partial failure of mind or memory, that is to say, even a failure of mind or memory to a considerable extent, from whatever cause, is not, in itself, sufficient ground for setting aside a will, if there still remains sufficient mind and memory to enable the testatrix to comprehend and understand what she is about, or what she is doing.   If she is able to understand that she is disposing of her estate by her will, and to whom she is disposing of it, however weak her intellect may be, she is able and competent

to make a valid will. And hence the courts never undertake to measure the size, the degree, or the extent, of a woman's understanding or capacity; nor do they ever inquire into the wisdom, or the folly, of the dispositions which she may have made of her estate.

The question is not so much as to the degree of mind or memory possessed by the testatrix, as this: Had she sufficient mind and memory? Had she a disposing mind and memory? Was she capable of recollecting what property she was disposing of, and to whom she was disposing of it? In a word, were her mind and memory sufficiently sound to enable her to know, and understand, the business in which she was engaged, at the time when she executed her will? *Jamison's Will, 3 Houst.* 108.

If the jury are of the opinion from the evidence that the testatrix was capable, at the time she executed her will, of exercising thought, and judgment and reflection—if she knew how she was disposing of her property—what she was about, and had memory and judgment, her will cannot be invalidated. *Chandler v. Ferris, 1 Harr.* 454; *Lodge's Will, 2 Houst.* 418.

In the case of *Sutton v. Sutton, 5 Harr.* 461, Chief Justice Harrington instructed the jury that testable capacity on the part of the testator amounted to nothing more than a knowledge of what he was about, and how he was disposing of his property, and the purpose so to do it.

In considering and determining the question of capacity, the time when the will was executed is the material point to which the jury must look, to ascertain the state and condition of the testatrix's mind. For, although she may have been incapable at any time before or after that period, yet, if she had sufficient capacity at the time when the will was executed, her prior or subsequent incapacity, amounts to nothing and the will must stand.

[6] It is to the words, the conversations, the appearance, the acts and doings, the conduct and behavior of the testatrix we are to look to ascertain the state of her mind; they alone are to us the external, visible and natural signs, or indications, of her mental condition. And, therefore, in this case, as in all other cases of like nature, the question of capacity must be determined from the

facts and circumstances disclosed and established by the evidence. In examining and weighing that evidence, you will carefully consider the character of the witnesses, for veracity and integrity—their bias and interest, on the one side, or on the other, if any—their intelligence and judgment, and their respective opportunities and powers of observation.

[7, 8]    And here it is but proper we should say to you, that the law makes a distinction between the subscribing witnesses to the will and other witnesses.    The subscribing witnesses being placed by the law around the testatrix, at the time of the execution of her will, for the special purpose, among others, of ascertaining and judging of her capacity, they are permitted to testify as to the opinion they formed at the time, of the condition of her mind—whether it was sound or unsound.    And if they are persons of intelligence and veracity their opinions are entitled to great weight with the jury.    Other witnesses may testify to her behavior, her conduct and conversations, her appearance, and to particular facts, tending to throw light on the state of her mind, and from which its condition can be fairly inferred, at the time she executed her will; but they cannot testify to their opinion, merely, of her capacity, without also stating the facts upon which that opinion is founded; and if the facts do not fully and clearly warrant that opinion, the opinion must go for nothing, for it is the fact, and not the opinion, upon which you must rely, in forming your judgment.

[9]    The testimony of medical men stands upon the same ground, except that, being more competent to form an opinion upon subjects of this kind, greater weight will in general be given to such opinions.    *Jamison's Will*, 3 *Houst*. 108.

Of course the value of the opinion of a subscribing witness, like other witnesses, depends upon the opportunity the witness had to observe and judge the testatrix's mental condition and capacity at the time the will was executed, and upon his use of such opportunity.    If it clearly appears from the testimony that he did not have, or having, did not use, his opportunity of observation, the special value of his opinion ceases, because the peculiar weight given by law to such testimony arises from the witness'

opportunity of observation and the probability of his using the opportunity on account of his participation in the transaction.

In the *Kane Will case*, the court said: "In determining the testator's condition at the precise time of the making of the will, the jury should give to the testimony of the subscribing witnesses to the will such credit as their peculiar relations to, and opportunities of knowing his condition just then, entitle them. The law places them there to speak to that point."

As we have already said the contestant contends that Harriet W. Burton was before, and at the time, of making her alleged will, laboring under insane delusions with respect both to her property and her sister, the contestant, and that the will in question is, therefore, invalid.

[10, 11] This court, in the *Duffield case*, 2 *Harr.* 379, to which we have referred, in speaking of delusions used the following language:

"A sound mind is one wholly free from delusion, all the intellectual faculties existing in a certain degree of vigor and harmony; the propensities, affections and passions being under the subordination of the judgment and will, the former being the controlling power, with a just perception of the natural connection or repugnancy of ideas. Weak minds again only differ from strong ones in the extent and power of their faculties. * * * A perfect capacity is usually tested by this, that the individual talks and discourses rationally and sensibly, and is fully capable of any rational act requiring thought, judgment and reflection. This is the standard of a perfect capacity; but the question is not how well a man can talk or reason, or how much judgment he can display, or with how great propriety and sense he can act. It is only, Has he mind and reason? Can he talk rationally and sensibly, or has he thought, judgment and reflection? Weakness of mind may exist in many degrees without making a man intestable. * * *

"An unsound mind is marked by delusion; it mingles ideas of imagination with those of sensation, and mistakes one for the other. It is often accompanied by an apparent insensibility to, or perversion of, those feelings which belong to our nature. Insane

delusion consists in the belief of facts which no rational person would have believed. It may sometimes exist on one or two particular subjects, although generally it is accompanied by eccentricity, irritability, violence, suspicion, exaggeration, inconsistency and other marks and symptoms which may lead to confirm the existence of delusion, and to establish its insane character. * * *

"It is hard to define the invisible line that divides perfect and partial insanity. Each case must rest on its own circumstances. * * * And this doctrine of partial insanity is applicable to civil cases, if existing at the time of the act done, and will avail to defeat a will, the direct offspring of such partial insanity. But it has been held that a will cannot be set aside on the ground of monomania, unless there be the most decisive evidence, that at the time of making the will, the belief in the testator's mind amounted to insane delusion."

The court in the *Duffield-Morris case* said in speaking of insane delusions: "This was the great question for the jury to try, whether the testator was the subject of such insane delusions, fancying things which did not exist and could not exist, and which no reasonable mind could believe to exist. Did this delusion, if any existed, continue up to the time of making his will, without intermission at that time, and to such an extent as to exclude thought, judgment and reflection, to deprive him of the power of rational conversation, on the matter he was about, and of that kind of knowledge that would enable him to apprehend in his own mind that he was making a will, and the objects and purposes of such an act? If he had this knowledge, memory and judgment, it is what the law means by a sound and disposing mind and memory, which is sufficient to make the will valid, whatever may have been the state of the testator's mind before or after."

We think the law respecting delusions is well settled. It was very clearly and tersely expressed by the court when they said, in the *Duffield case:* "Partial insanity, meaning insane delusion, will avail to defeat a will which is the direct offspring of such partial insanity or insane delusion."

Such is the doctrine now recognized by the courts, not only of this state, but of this country and of England. It is no longer

held that the mere existence of a delusion, at the time of the
execution of the will, will invalidate the will; and the case of
*Waring v. Waring* has been long since disregarded and overruled.

Such being the law, we say to you that the mere fact that a
testatrix had delusions at the time she made her will is not suffi-
cient in itself to invalidate the will. To have such effect the jury
must be satisfied that the will was the direct offspring or product
of such delusion, was made under the influence thereof, or the delu-
sion manifestly operated upon the disposition in the will.

The rule is that, if the delusion was not such as to affect the
testatrix's knowledge, memory and understanding of the extent
and nature of her estate, the proper objects of her bounty, and
the nature of the testamentary act, she has capacity in law to
make a will. In the particular case the inquiry should be, did the
testatrix, notwithstanding the delusion, have a sound and dispos-
ing mind and memory at the time she made her will. In the last
analysis that is the question the jury must decide; and we have
stated, as clearly as we can the law that must control you in
reaching such decision.

We cannot define or describe to you specifically the symp-
toms or evidences of insanity or insane delusions, and any attempt
to do so would probably confuse rather than assist you. All that
we can say, and we think all we should say, is that you must
determine from the facts disclosed by the evidence in the case
whether Harriet W. Burton was insane, or laboring under an
insane delusion, at the time she made her will; and if you find
that she was, you must then determine whether the insanity or
delusion was such as would invalidate her will under the law as
we have stated it.

Because of the importance of this case, we have given you at
some length the principles of law respecting testamentary capac-
ity, as declared by the courts of this state; and courts, and juries
too, must be governed by that law in determining whether the
testatrix had or had not, at the time she executed her will, testa-
mentary capacity, that is, a sound and disposing mind and
memory.

In conclusion we will say that the question which you are

now called upon to decide lies within a very narrow compass. It is simply this: Whether Harriet W. Burton, on the seventeenth day of June, 1911, the time when the will now in issue before you was executed by her, had sufficient mental capacity, that is, mind and memory to make a valid will; and if you shall be satisfied from the evidence that the mind and memory of the testatrix at the time she executed her alleged will was not sufficiently sound to enable her to know and understand what she was about or what she was doing, your verdict should be against the will. But if, on the contrary, you should be satisfied from the evidence that the mind and memory of the testatrix at the time she executed her alleged will, was sufficiently sound to enable her to exercise thought, reflection and judgment and to know and understand what she was about, or what she was doing, then her will should stand, and your verdict should be in favor of its validity.

The jury found the paper writing to be the last will and testament of Harriet W. Burton, deceased.

After the verdict, application was made to the court, on behalf of the contestant, to tax fees for a large number of witnesses who had been subpœnaed but not called to testify. Special consideration was given to the application, when the following announcement was made.

PENNEWILL, C. J., delivering the opinion of the court:

[12]   The court have been asked to tax, as a part of the costs in the above stated case, the fees of a large number of witnesses who were subpœnaed to give testimony in behalf of the contestant, but who were not called, and did not testify in the case. We have given the matter special consideration since the motion was made, because the court is often embarrassed, and sometimes in doubt, as to what order should be made under similar applications.

We have reached a conclusion which we believe will be of some relief and assistance to both court and bar in the future.

In all these cases the court must necessarily rely, to a great extent, upon the representations and good faith of counsel. If the

process of the court is used simply as a convenience to counsel in bringing parties before them so that they may learn whether they know anything about the case, and they are not called to the stand because they have no knowledge or information that would be relevant to any issue in the case, the fees of such persons will not be taxed.

If counsel represent to the court that the persons whose fees they ask to be taxed were subpœnaed with the belief that they had knowledge or information that would be relevant to some issue in the case, and counsel were of the opinion, after conferring with them, that they had such knowledge or information, but they were not called because, in the development of the case, it was deemed unnecessary or inexpedient to do so, the fees of such persons will be taxed, provided the number is reasonable, and no good reason is shown to the court why they should not be taxed. We now ask counsel to designate the persons subpœnaed, but not called and examined, whose fees should be taxed under this ruling.

The issue and record sent up by the register of wills were remanded, with the certificate of the prothonotary certifying to the verdict of the jury upon the trial of said issue.

Whereupon, on the second day of December, A. D. 1912, the said register, having considered said verdict together with the whole record of said cause, made the following order:

"It is ordered, adjudged and decreed by the register that the paper writing purporting to be the last will and testament of Harriet W. Burton, deceased, dated the seventeenth day of June, 1911, is the last will and testament of the said Harriet W. Burton, deceased, and the probate heretofore made thereon is hereby confirmed and sustained and the letters testamentary thereon heretofore granted shall continue in full force and power. And it appearing to the register that the petitioner for a review of the probate of the last will and testament had reasonable grounds for a contest of said will, it is therefore further ordered, adjudged and decreed by the register that the costs of the proceedings taken with respect to said will in connection with and based on the petition for a

review of the probate thereof, including the framing of said issue, and the trial thereof, by the said Superior Court, which are hereby taxed at the sum of $1,689.21, be paid out of the estate of the said Harriet W. Burton, deceased, out of which sum $1,500 is hereby allowed and shall be paid to Ann S. Rodney, petitioner for the review of the probate of said will, and to Arley B. Magee, Esquire, and James M. Satterfield, Esquire, her attorneys to defray all expenses, including counsel fees of contesting the probate of said will."

And, on the same day, counsel for George Burton of J. H., executor, and George Burton of J. H. "appeal from so much of the said order as allows $1,500 for expenses and counsel fees to Ann S. Rodney, the petitioner for the review of said last will and testament and as taxes same as part of the costs in the proceedings in review."

The register, on the fourth day of February, A. D. 1913, certified the appeal and a copy of all the proceedings in the matter aforesaid to this court.

The court having heard counsel for the respective parties on said appeal, and having deliberately considered the questions presented, announced the following opinion:

PENNEWILL, C. J., delivering the opinion of the court:

This is an appeal from the decree of the register of wills of Kent County allowing Ann S. Rodney the sum of fifteen hundred dollars, to be paid by the estate of Harriet W. Burton, deceased, "for expenses, including counsel fees, of contesting the probate of the will of the said Harriet W. Burton."

The judges now sitting, who constituted the court at the trial of the issue sent up by the register in the above stated case, have refreshed their recollection of the testimony given at the trial by resort to the stenographer's notes. After reading and considering the testimony adduced on the part of the contestant, Ann S. Rodney, we are of the opinion that there was not reasonable ground for the contest, and that the register was not, therefore, warranted in allowing the sum of fifteen hundred dollars, to be paid to Ann S. Rodney, by the estate of the testatrix, for expenses and counsel fees incurred in contesting the will of said deceased.

Opinion.

[13]   There can be no controversy about the law applicable to the question before the court.  Whether a reasonable sum shall be allowed the contestant for counsel fees necessarily incurred in making the contest depends upon the strength and reasonableness of the contestant's case.  If there was probable cause, or reasonable ground, for resisting the will, based upon competent evidence, the contestant should be allowed such expenses, and not otherwise.  The court must, of course, determine in every case where an allowance is asked for whether it shall be granted or not, and in reaching a conclusion it is necessary to consider the testimony produced by the contestant, without regard to that produced by the propounders of the will, other than the formal proof of its execution.

We think the proof of the execution of the will should be considered because the contestant must assume that the formal proof of the execution of the instrument will be made, and that the evidence against the will must be sufficient to overcome it.  In such formal proof is embraced the opinions of the subscribing witnesses respecting the mental condition of the testator at the exact time of the making of the will, as well as the peculiar weight and consideration which the law gives to such opinions.

The courts of this state have never undertaken to define "probable cause," or "reasonable ground", as those terms are employed in connection with contested wills.  It has been left for the court to say in each particular case whether such cause or ground did or did not exist.  We believe, however, the true and fair test to be, as already indicated, that the evidence produced by the contestant must, in itself, be sufficient to establish a *prima facie* case, and overcome the presumption of law that always exists in favor of the will's validity, as well as the formal proof of its execution, and justify the court in believing that the paper writing in issue is not the will of the deceased, if no other evidence should be produced.

Governed and guided by such a test, we must conclude that the contestant in the case before the court is not entitled to any allowance for counsel fees to be paid by the testatrix's estate.

At the trial in this court of the issue whether the paper writ-

ing in question was or was not the last will and testament of Harriet W. Burton, deceased, the two subscribing witnesses gave such testimony respecting the execution of the will as is usually given by testamentary witnesses, and which is sufficient to establish the will if not overcome by opposing testimony. In addition to such proof, which the contestant must expect to be made, there existed, as there does in every such case, the strong presumption of law that the paper writing offered for probate was the last will and testament of the deceased. The evidence admitted in behalf of the contestant was not sufficient to overcome such proof and presumption, and we think, if no other evidence had been produced in support of the will, it might have been very properly sustained and upheld by a court or jury whose duty it · was to determine its validity.

This court in recently deciding an application in the *Warrington Will case* practically similar to the one now before the court (81 *Atl.* 501) said: "Commenting only upon that exception which relates to the disallowance by the register of counsel fees for this petitioner's counsel, the court has to say that it knows of no rule whereby counsel fees for the petitioner's counsel in contested will cases are of right or of course taxable as a part of the costs to be paid by the estate. Indeed, the inclination of the court is to the contrary, as it feels that the allowance of counsel fees as costs constitutes an exception rather than a rule. Obviously in certain cases counsel fees for both parties should be charged against and paid by the estate, but we do not think this case comes within this exceptional class. It is apparent to the court, however, that in the preparation and presentation of this case, counsel for the petitioners have been subjected to expenses, which although certain, are difficult to designate and enumerate."

The court in that case allowed counsel for the contestant the sum of two hundred and fifty dollars as and for expenses, to be paid, like the rest of the costs, by the estate.

The decision in the *Warrington case* has been substantially followed in the following subsequent cases, viz.:

The *Lynch case* in Sussex County, and the *Hill case* and *Miller case*, in New Castle County. In the *Lynch case* the sum of three

hundred dollars, was allowed for the reasonable and necessary expenses of contestant's counsel, and the costs on both sides were taxed against the estate.. In the *Hill case* the sum of one hundred dollars was allowed for expenses of counsel and in both of the last mentioned cases counsel fees were disallowed because the court were of the opinion, after considering the evidence produced by the contestants, that there was not reasonable cause for the contest. But in the case of the *Miller Will* counsel fees were allowed because the court were clearly of the opinion that there was reasonable cause or ground for the contest. Indeed, in the *Miller case* the evidence against the will was exceptionally strong.

Without attempting to analyze or state the evidence produced by the contestant in the case before the court, we will say that it was very much weaker than the evidence in the *Miller case*, and not materially stronger than that offered in either the *Warrington* or *Lynch case*.

For the reasons given we hold that the register was not warranted in taxing, as a part of the costs to be paid by the estate of the testatrix, counsel fees for the contestant, and the decree of the register is to that extent reversed and set aside. But we further hold, in conformity with the rulings made in the *Warrington* and *Lynch cases*, that the contestant's counsel were entitled to such reasonable and necessary expenses as were incurred in the preparation and presentation of their case. We think the sum of three hundred dollars would be a reasonable allowance for such expenses, and accordingly hold and order that such sum should be taxed as a part of the costs in the case, and be paid to Ann S. Rodney's counsel, by the testatrix's estate.

It is directed that a copy of this opinion and order be certified to the register of wills of Kent County.