In the Matter by the **ESTATE of Louise BANDURSKI.**

Court of Chancery of Delaware, New Castle.

Aug. 19, 1971.

Jay H. Conner, of Conner & Daley, Wilmington, for proponents (appellees).

Charles M. Allmond, III, of Allmond & Wood, Wilmington, for contestants (appellants).

DUFFY, Chancellor:

This is a will contest case in which the Register of Wills, after hearing, admitted to probate the will of Louise Bandurski dated September 9, 1968. The proponents are Mrs. Bandurski's son Edward, her daughter Dorothy Kozlowski, and Dorothy's husband, Victor. The contestants (caveators) are Mrs. Bandurski's son Walter and her daughter Helen Maher; they appeal from the order by the Register.[1]

A.

Louise Bandurski was a widow who died on December 10, 1968 at about age 73. She was survived by five children: Stanley, Edward and Walter Bandurski, Dorothy Kozlowski and Helen Maher. Stanley Bandurski is in a State facility for the mentally retarded.[2]

Mrs. Bandurski had executed three wills: (a) under date of January 10, 1967 she gave $1.00 to Stanley and the balance of her estate equally to her other children; (b) under date of June 27, 1968 she gave $300 to Helen, $500 to Stanley, $3,000 to Edward and the residue of the estate to Dorothy and to Walter's wife, Barbara, in equal shares; (c) under date of September 9, 1968 (the probated will) she gave $300 to Helen, $300 to Walter and the residue to Dorothy; she named Dorothy and Victor as her co-executors.

On July 26, 1968 she changed her bank account (with a balance of $20,402.35) to joint ownership with Dorothy and Victor Kozlowski. On July 29 another bank account (with a balance of $13,301.50) was placed in the same joint ownership. At the same time the last will was made Mrs. Ban-

---

1. Upon abolition of the Orphans' Court, appellate jurisdiction over the Court of the Register of Wills was vested in the Court of Chancery, 57 Del.Laws, Ch. 402.

2. Stanley was represented in the Register's Court by Dennis A. Reardon, Esquire.

durski conveyed her house at 2613 Marsh Road to Edward.

Two of Mrs. Bandurski's children are neighbors: Helen lives at 2611 Marsh Road, Dorothy lives at 2640 Marsh Road. Mrs. Bandurski lived at 2613 Marsh Road. All of these homes are located on lands which were a part of the Bandurski family farm.

In November or December 1967 Mrs. Bandurski became seriously ill and was not expected to live. Helen was her eldest daughter and with the assistance of Pittman Marriner, who also lives at 2611 Marsh Road, she undertook the care of her mother. Mrs. Bandurski remained in her own home with her husband who was then living. Helen did the cooking for her parents, Dorothy did the wash, they hired a person to clean. Helen or Mr. Marriner cared for Mrs. Bandurski during the evenings.

On May 13, 1968 Mr. Bandurski became ill and was hospitalized for about five weeks. Helen, who was employed during the day, stayed with her mother for eight nights following her father's hospitalization. She asked for help in caring for her mother and argued with her brother-in-law, Victor, over this. Soon thereafter, Mrs. Bandurski was taken to stay with Dorothy and Victor in their home. After Mr. Bandurski returned he and Mrs. Bandurski lived in their own home for about two weeks; Mr. Bandurski then went to Walter's home and Mrs. Bandurski returned to Dorothy's. Neither of the Bandurskis returned to their home again; Mr. Bandurski died in August and Mrs. Bandurski died a few months later in December.

The wills made in June and September were made while Mrs. Bandurski was a resident in the Kozlowski home.

**B.**

■ On appeal from a ruling by the Register, this Court's duty is the same as that formerly vested in the Orphans' Court, and that duty, as stated by the Supreme Court in Nardo v. Nardo, 58 Del. 400, 209 A.2d 905 (1965), is to grant a "rehearing on fact and law," including the duty to weigh and evaluate the evidence. The review, of course, is on the record made before the Register unless, in the exercise of a sound judicial discretion, the Court decides that all or some of the evidence should be heard anew. In re Will of Collins, Del.Supr., 251 A.2d 345 (1969); In the Matter of Levering, Del.Supr., 271 A.2d 42 (1970).

**C.**

Appellants argue from two premises: they say that Mrs. Bandurski lacked testamentary capacity at the time she made the will and when she made it she was under the influence and domination of Dorothy and Victor Kozlowski and Edward Bandurski.[3] I first consider the contention that Mrs. Bandurski lacked testamentary capacity.

■ Testamentary capacity means that one who makes a will must, at the time of execution, be capable of exercising thought, reflection and judgment; he must know what he is doing and how he is disposing of his property; he must have sufficient memory and understanding to comprehend the nature and character of his act. Pritchard v. Henderson, 3 Pennewill 128, 50 A. 217 (1901); Rodney v. Burton, 4 Boyce 171, 86 A. 826 (1912).

■ A review of the testimony in the record demonstrates that the Register was quite right in his conclusion that the contestants did not prove lack of testamentary

---

3. It is also argued that the will Mrs. Bandurski signed on June 27, 1968 was the result of undue influence but, in the view I take of the case, it is not necessary to reach that issue.

capacity. They rely essentially on the testimony of Stanley Czajkowski, Esquire, who refused to prepare a will for her in August 1968, and on the testimony of Dr. Ignatius J. Tikellis. But Mr. Czajkowski's concern was directed substantially to undue influence, not capacity; while he discussed both questions it is apparent that he regarded Mrs. Bandurski as competent to sign a will.[4] As to Dr. Tikellis, he first saw Mrs. Bandurski on September 27, 1968, some two weeks after she had signed the will. And while she was suffering from a degenerative disease, Dr. Tikellis said flatly that he could give no opinion as to Mrs. Bandurski's capacity on September 9.[5] In view of his express refusal to give an opinion as to capacity, the Court cannot draw from his testimony an inference that Mrs. Bandurski lacked capacity. Accordingly, there is no merit to appellants' argument based on incapacity.

### D.

I turn now to the contention that Mrs. Bandurski was under the influence and domination of the Kozlowskis and her son Edward when she signed the September 9 will.

The law as to undue influence is settled in Delaware by the decision in Conner v. Brown, 39 Del. 529, 3 A.2d 64 (1938), which has been followed consistently. The Court there said:

"It is immaterial how this is done, whether by solicitation, importunity, flattery, putting in fear, or in some other manner; but whatever the means employed, the undue influence must have been in operation upon the mind of the deceased at the time of the execution of the will. The essentials of undue influence are a susceptible testator, an opportunity to exert influence, a disposition so to do for an improper purpose, the actual exertion of such influence, and the result demonstrating its effect."

The record shows the competition among Mrs. Bandurski's four children for her property. In particular, the conduct of Edward and of the Kozlowskis (the apparent winners) was aggressive and, in many ways, reprehensible. Focusing on their conduct, as we must in this charge of domination by them, it is apparent that many of the indicia of undue influence fixed by *Conner* were present. Thus, there was, (a) an opportunity to exert influence (Mrs. Bandurski lived in the Kozlowski home); (b) a disposition to do so for improper purposes (to eliminate any gift to other children so that they alone would receive all property and; (c) the result demonstrates its effect (substantially all of Mrs. Bandurski's property went to Dorothy and Edward). And there was evidence that at the critical time Mrs. Bandurski was a susceptible testatrix (her failing health and her residence in the Kozlowski home). But *Conner* also requires a finding that undue influence was "in operation upon the mind of the deceased at the time of the execu-

4. Mr. Czajkowski testified:
"Q Besides the possible influence factor, you felt that she had the mental capacity to understand what property she had and know what she wanted to do with it?
A I don't know if I can separate the two influences or the two factors. She was ill, and I felt there was a chance of influence being in existence. If you separated the two, if you could separate the two, that there was no possibility of any outside influence being used against her mind, if that was possible, yes, my answer would be yes, I would draw it up."

5. Dr. Tikellis testified:
"Q You can't give us an opinion as to whether she is [sic] capable of understanding what she wanted to do with her will at that time, September 9th?
A Not on September 9th when it was done.
Q You can't give us an opinion as to that?
A No. On the dates I saw her I felt she was not capable of making such fundamental decisions, and this is what I put in the letter, but I did not see her at the time of September 9th, therefore I am not sure as to what her condition was then."

tion of the will." Assuming a confidential relationship between Mrs. Kozlowski and the Testatrix, In re Hurst's Estate, 406 Pa. 612, 179 A.2d 436 (1962), I am satisfied that the proponents carried before the Register of Wills the burden of proving the absence of undue influence on this key issue. I say this essentially because of the testimony of Charles L. Paruszewski, Esquire, who prepared the will; and his testimony is supported generally by other independent witnesses.

Mr. Paruszewski, who did not know any of the parties, was aware of the possibility of undue influence before he prepared the will and carefully explored this before and during execution. He talked with the Testatrix on four separate occasions before execution. He talked with her doctor. He talked alone with her. He reviewed her relationship with each of her children. He discussed dispositive provisions of the will as to each.

While the Kozlowskis may have exerted an improper influence, it is difficult to find on this record that such influence was actually operative at the time of execution of the will. A reasonable inference is that Mr. Paruszewski had established a confidential relationship with the Testatrix, she had full opportunity to review any and all of the dispositive provisions with him and, indeed, did so. There was, as I have said, evidence to show that the Kozlowskis had a selfish purpose and they sought to implement it. But any such activities were at a time different from that of actual execution of the will. In review of the direct testimony about Mrs. Bandurski and her condition at the time of execution, it would be unreasonable to infer that any undue influence, in the legal sense, survived and was operative at that time.

The judgment of the Register of Wills will be affirmed.