S. Bernard ABLEMAN and Percival J.
Ableman, Respondents Below,
Appellants/Cross-Appellees,

v.

Linda Bereston KATZ, David A. Bereston
and Michael E. Bereston, Petitioners
Below, Appellees/Cross-Appellants.

Supreme Court of Delaware.

Submitted on Reargument: June
13, 1984.*

Decided: July 26, 1984.

* This opinion after reargument is a supplemental
version of the original opinion on appeal dated
March 27, 1984 and supercedes the original
opinion.

Bruce M. Stargatt, Wilmington (argued), Jack B. Jacobs and Josy W. Ingersoll of Young, Conaway, Stargatt & Taylor, Wilmington, for appellants/cross-appellees.

Walter L. Pepperman, II., Wilmington (argued) and Eric C. Howard of Morris, Nichols, Arsht & Tunnell, Wilmington, for appellees/cross-appellants.

Before McNEILLY and HORSEY, JJ., and MARTIN, Judge.

McNEILLY, Justice:

S. Bernard Ableman and Percival J. Ableman (Respondents), the two surviving sons of Bertha Ableman (Testatrix), appeal from a portion of a Final Order of the Court of Chancery dated January 13, 1983; and Linda Bereston Katz, David A. Bereston, and Michael E. Bereston (Petitioners), three of the testatrix's grandchildren born of the marriage between her third child, Marion, and Eugene Bereston, cross-appeal from the same Order. The issue raised on appeal by the respondents concerns itself with that portion of the Order awarding attorney fees and costs to petitioners for their unsuccessful attempt to invalidate the testatrix's will. The cross-appeal seeks to set aside a finding of the Court below that there was a lack of evidence regarding undue influence on the testatrix thus sustaining the validity of the will. In regard to the cross-appeal, we affirm the finding of the Chancellor that the testatrix's will was not the product of undue influence by respondents. We reverse, however, as to the award of counsel fees and costs to petitioners.

I

Shortly after the death of the testatrix, petitioners brought an action whereby they intended to have the residuary clause of a will executed in 1979 by testatrix declared invalid and, if necessary, the residuary clause of an earlier 1976 Will. The original petition alleged that at the time of the execution of the 1979 Will, testatrix was (a) not of sound and disposing mind, (b) lacking in testamentary capacity, and (c) subject to the influence and control of the respondents. Upon dismissal with prejudice of the first two counts, petitioners amended the third count seeking to set aside the residuary clause of the 1979 Will and a condition on a specific bequest allegedly favoring a child of one of the respondents over one of the petitioners as being the result of undue influence by respondents on the testatrix.

The circumstances leading up to the filing of the petition can be summarized briefly. Benjamin Ableman, the testatrix's husband, in his Last Will and Testament, written in 1968 by his brother, Meyer Ableman, provided that his residuary estate was to go to his sons, the respondents herein, in the event he was predeceased by the testatrix. The Chancellor found that Benjamin purposely avoided providing for his invalid daughter Marion and her family in the residuary clause due to his resentment of demands made by Marion's husband regarding her medical expenses for which Benjamin had provided approximately $100,000 during his lifetime. At that same time, the testatrix did not execute a similar Will prepared by Meyer Ableman in which the respondents would have taken under the residuary clause if Benjamin had predeceased them. This was apparently due to the fact that the bulk of the testatrix's estate came from the estate of Benjamin.

After Benjamin's death in 1976, the testatrix, at the age of 86, executed a similar Will to those prepared earlier leaving the residuary estate to respondents. A different attorney, however, prepared the document and pursuant to his advice, residuary trusts rather than outright gifts to respondents were set out in order to minimize estate taxes. The Will was signed by testatrix in the attorney's office with neither respondent being present.

Later, in early 1979, testatrix learned that her grandson, David Bereston, one of the petitioners, had withdrawn from college to spite his father and, in addition, refused to reconvey a property to his father which the father had conveyed to his children during an earlier divorce proceeding. Having strong feelings regarding the actions and attitude of her grandson, testatrix while on vacation consulted a Florida attorney, a law school classmate of Bernard, one of the respondents, and executed a Codicil to her 1976 Will conditioning an original specific bequest of $5,000 to her grandson on the reconveyance of the property in question to his father.

Later that same year, testatrix executed what was to become her Last Will and Testament. Prompted primarily by her desire to provide a $5000 bequest to her granddaughter, Peggy Ableman, who purposely had not been so provided for under the 1976 Will, testatrix requested that Bernard prepare the new Will and later executed it in the office of Meyer Ableman. At the time testatrix signed the 1979 Will, neither respondent was immediately present and testimony indicated that she was alert and competent on that date.

In the 1979 Will, testatrix made provision for Peggy Ableman consonant with those to her other grandchildren except David, on whom she placed the condition set out in her 1979 Codicil of reconveyance of property to David's father and further added a requirement of completion of undergraduate studies in order for him to take. In addition, the residuary clause of the Will leaving the bulk of the estate to respondents was identical to that of the earlier 1976 Will and, apart from the change utilizing trust devices, once again echoed the dispositions made in the Will of Benjamin Ableman.

On November 16, 1980, the testatrix died and shortly thereafter respondents, as named executors, offered the 1979 Will for probate.

## II

In order to provide greater clarity in regard to the issues raised, we turn first to petitioners' cross-appeal argument that the Court below erred when it found in favor of the respondents on the merits.[1] The petitioners contend that the Court below committed an error of law when it refused to recognize that a presumption of undue influences arises in a Will contest upon proof that a person instrumental in the execution of a Will by a physically infirm and mentally weakened testatrix benefited thereunder. In addition, petitioners contend that even if this Court fails to recognize such a presumption, the preponderance of the evidence in any event showed undue influence on the testatrix.

The law of Delaware as to undue influence is clearly set forth in *Connor v. Brown*, Del. Super., 3 A.2d 64 (1938). In that case, the Court stated the following regarding the degree of influence necessary to constitute undue influence on a testator:

> [It] must be such as to subjugate his mind to the will of another, to overcome his free agency and independent volition, and to impel him to make a will that speaks the mind of another and not his own. It is immaterial how this is done, whether by solicitation, importunity, flattery, putting in fear, or in some other manner; but whatever the means employed, the undue influence must have been in operation upon the mind of the deceased at the time of the execution of the will.

*Id.* at 71.

The Court then went on to set out the five elements of undue influence, namely, "a

---

1. In the Court below, petitioners proceeded upon an unprecedented theory of "partial" invalidity attacking only the residuary clauses of the 1976 and 1979 Wills and one specific bequest. Because we uphold the Chancellor's ruling that no undue influence existed with regard to the 1979 Will, we find no reason to address the applicability of this theory under 12 *Del.C.* § 1309.

susceptible testator, opportunity to exert influence, a disposition so to do for an improper purpose, the actual exertion of such influence, and the result demonstrating its effect." *Id.*

Applying this standard to the evidence presented at trial and seeing no need to reiterate in detail that upon which the Chancellor accurately based his conclusions, we find that there was a lack of undue influence sufficient to sustain the validity of the 1979 Will. The evidence that testatrix's state of mind was strong and consequently she could be considered an independent person is clearly set forth by the testimony of friends, religious counselors, physicians and others who knew the testatrix during the last years of her life. In particular, the testimony of her granddaughter, Peggy Ableman, concerning the physical and mental condition of the testatrix on the day the 1979 Will was executed further supports this conclusion.

The position advanced by petitioners that a presumption of undue influence arises shifting the burden of proof to the proponents of the Will when evidence presented shows a susceptible testatrix, a confidential relationship, and a result demonstrating the effect of undue influence is without merit. *Brown v. Conner, supra. Contra, In re Estate of Bandurski,* Del.Ch. 281 A.2d 621 (1971). Even assuming that such a presumption does arise the same result would follow because even though the testatrix gave the bulk of her estate to her only two living children, a result allegedly demonstrating the effect of undue influence, the fact is that all the other elements giving rise to such a presumption have not

been established. Therefore, under the facts of this case, we see no need to address whether such a presumption arises in undue influence cases.

### III

We now turn to respondents' argument raised on appeal that the Court below erred as a matter of law in awarding attorney fees to petitioners for their unsuccessful attempt to invalidate the Will in question. The award of attorney fees of $50,000 to petitioners was based upon the Court's finding that reasonable ground for petitioners' contest existed in that petitioners were justified in relying upon *Bandurski, supra,* regarding a shift in the burden of proof in those cases involving confidential relationships.[2] Further justification was found in what was deemed petitioners' "Herculean effort to develop the case for trial." In our view, neither position is sufficient to justify an award of attorney fees to unsuccessful will contestants, but before we apply the rule to that effect, we find it necessary to track the historical development of the case law in this area.[3]

Initially, we turn to the case of *In re Warrington's Will,* Del.Supr., 81 A. 501 (1911), in which the court stated:

it knows no rule whereby counsel fees for petitioner's counsel in contested will cases are of right or of course taxable as a part of the costs to be paid by the estate. Indeed, the inclination of the court is to the contrary, as it feels that the allowance of counsel fees as costs constitutes an exception rather than a rule. Obviously in certain cases counsel fees for both parties should be charged

---

**2.** In addition to the award of counsel fees, petitioners were also awarded $19,419.97 for costs. Respondents, on the other hand, were awarded $50,000 in *counsel fees and costs* of $20,488. Both awards were made out of the residuary estate totalling approximately $200,000.

**3.** At the outset, we note that the two leading theories in other jurisdictions regarding the ability of a losing contestant to recover attorney fees are the "probable cause" rule and the "benefit to the estate" principle. *Annot.,* 40 A.L.R.2d

1407, 1440–50 (1955). Based upon our reasoning in adopting the rule we set forth *infra,* we deem the two approaches to be reconciled to a great degree and with much greater clarity.

A third theory, not as widely recognized as the other two, makes the award of fees dependent upon whether the contestant is successful. *See, Annot.,* 128 A.L.R. 1002, 1011 (1940). Since we are concerned only with the award of attorneys fees to unsuccessful contestants, we see no need to address this theory further.

against and paid by the estate, but we do not think this case comes within this exceptional class.

*Id.* at 501.

Thus, we see that the Court was of the opinion that no exceptional circumstances existed under the facts to warrant an award of attorney fees. Presumably, the Court disregarded analysis of whether probable cause to initiate the contest existed because its existence had no bearing if exceptional circumstances were found lacking. In other words, if exceptional circumstances are found not to exist, fees are denied notwithstanding the existence of probable cause or reasonable ground to bring suit. The problem, however, in relying on this case, is that one cannot glean the facts from the reported decision. Therefore, we do not have an example of what doesn't qualify as an exceptional circumstance.

The next case we turn to is *Rodney v. Burton,* Del.Super., 86 A. 826 (1912) in which attorney fees again were denied to a losing contestant. In that case, the will in question, executed by a 76 year old testatrix six weeks before her death, left all her property to an unrelated person, and the contestant presented evidence that the testatrix was suffering from paranoia and delusions. The Court, looking first to see whether probable cause or reasonable ground existed, stated:

> There can be no controversy about the law applicable to the question before the court. Whether a reasonable sum shall be allowed the contestant for counsel fees necessarily incurred in making the contest depends upon the strength and reasonableness of the contestant's case. If there was probable cause, or reasonable ground, for resisting the will, based upon competent evidence, the contestant should be allowed such expenses, and not otherwise.

*Id.* at 832.

Going on to define "probable cause or reasonable ground", the Court found:

the true and fair test to be, as already indicated, that the evidence produced by the contestant must, in itself, be sufficient to establish a prima facie case, and overcome the presumption of law that always exists in favor of the will's validity, as well as the formal proof of its execution, and justify the court in believing that the paper writing in issue is not the will of the deceased, if no other evidence should be produced.

*Id.*

Applying this test, the Court concluded that the contestant in the case before the Court was not entitled to attorney fees.

At first blush, it appears as if the Court in *Rodney v. Burton* applied only a "probable cause or reasonable ground" standard. We find this to be so, but only to the extent that had the Court found probable cause, it no doubt would have gone on to see if exceptional circumstances existed. This is so because even after the Court failed to find probable cause, it went on to consider the concept of exceptional circumstances as evidenced by the following:

> The decision in the *Warrington* case has been substantially followed in the following subsequent cases, viz.:
>
> The Lynch Case in Sussex County, and the Hill Case and Miller Case, in New Castle county. In the Lynch Case the sum of $300 was allowed for the reasonable and necessary expenses of contestant's counsel, and the costs on both sides were taxed against the estate. In the Hill Case the sum of $100 was allowed for expenses of counsel and in both of the last mentioned cases counsel fees were disallowed because the court were of the opinion, after considering the evidence produced by the contestants, that there was not reasonable cause for the contest. But in the Case of the Miller Will counsel fees were allowed because the court were clearly of the opinion that there was reasonable cause or ground for the contest. Indeed, in the Miller Case the evidence against the will was *exceptionally* strong.

*Id.* (emphasis added).

Thus, just as where the *Warrington's Will* Court presumably applied a probable cause plus exceptional circumstance rule, the same is true here although in *Warrington's Will* the case turned on a failure to find exceptional circumstances, while here the Court found no probable cause. It logically follows that a failure to satisfy either requirement results in a denial of attorney fees regardless of whether an analysis of "probable cause" or "exceptional circumstances" is undertaken before the other if, as a result, the first considered is found lacking.

We now come to the case of *In re Gordon's Will*, Del.Super., 111 A. 610 (1920) where attorney fees were awarded a losing contestant. The facts show that a testatrix on her deathbed made a will leaving all her property to her two nieces and nothing to her two nephews, who were her only living relatives. The will in question was refused probate when four witnesses testified that the testatrix was mentally incapable of making a will. The Superior Court reversed, but awarded the contestants their attorneys fees finding that they "had some ground for resisting the will, and certainly were justified in resisting the case on appeal after the register of wills had refused to probate the will." *Id.* at 614. Although one could argue that the phrase "some ground" connotes the application of a "probable cause or reasonable ground" test, we think the quoted language taken as a whole indicates that the Court was requiring more than that, namely, a showing of probable cause plus exceptional circumstances. And, just as the Court faced with the facts in *Gordon's Will* impliedly found, our view of those facts "certainly" places that case within an "exceptional class."

The next case we come to is *Conner v. Brown*, Del.Super., 3 A.2d 64 (1938). In that case, fees were denied to a losing contestant of a will executed by a 77 year old widow less than two months before her death, which left almost all her property to

a neighbor who had accompanied the testatrix to the office of the lawyer who drafted the will in question. In denying counsel fees, the Court began by applying the "probable cause, or reasonable ground" standard and noted further that "[t]he contest of a will should not be entered upon lightly, and the notion, sometimes entertained, that a will contest is a good speculation for the reason that it will cost the contestant nothing is one to be discouraged." *Id.* at 73. The denial of fees, however, turned on other grounds which can be gleaned from the following:

> A will adjudged to be void on the ground of undue influence, which is a species of fraud, can have no effect as a revocation of a prior will, ...; and it being admitted that the first will was the true will of the testatrix, and it appearing from the proof that the entire estate of the testatrix was disposed of and that the caveator received nothing thereunder, it is impossible to see upon what theory the caveator had any standing before the Register to resist the probate or here to prosecute an appeal. ... Being a mere volunteer and having no right to contest the probate of the will, it is clear that the costs must be taxed against him, and that no allowance can be made for his expenses or counsel fees.

*Id.* at 74 (citations omitted).

Once again, although the "probable cause, or reasonable ground" standard appears to be controlling, the quoted language tends to imply the application of an exceptional circumstance standard. This is so because a "mere volunteer" would not be awarded attorney fees, even if probable cause is shown, absent a showing that he would in fact take under an earlier will. We agree that being a "mere volunteer" would not qualify as an exceptional circumstance.

The last case we deem necessary to review is that of *In re Estate of John D. Newell*, Del.Ch., R/W 68032, Brown, V.C. (December 20, 1977). In that case, the testator was an aging alcoholic whose doctor felt he needed a guardian and who

disinherited his only living children, leaving all his property to an unrelated woman friend whom he had known only for the last six years of his life. While the Court ultimately found against the children-contestants who had challenged the will on the grounds of undue influence and lack of testamentary capacity, the Court awarded attorney fees to the unsuccessful contestants. In so doing, the Court noted the definition set out in *Rodney v. Burton, supra,* regarding the test to apply to determine whether "probable cause, or reasonable ground" exists, and found that "the contesting children ... have met their burden". *Id.* at 3. Based only upon reference to the cited passage, one might say that the Court applied only that standard mentioned. We find to the contrary, however, in that later language in the opinion notes that "[u]nder the theory that the action was a *benefit to the estate* by resolving the identity of those who are rightfully entitled to administer and receive it, fees should not be awarded in such an amount as to virtually dissipate the estate." *Id.* at 5 (emphasis added). In our opinion, the underlined language sets forth an exceptional circumstance, namely, the benefit one might confer upon an estate by bringing a challenge to a will.[4] So viewed, the Court, in essence, applied a probable cause plus exceptional circumstance standard.

■ As noted from the brief analysis set forth, we find that the lower Court decisions in Delaware since *Warrington's Will, supra,* have applied a probable cause plus exceptional circumstance test although at times it may have appeared otherwise depending on the aspect of the rule found lacking in a given situation. Further muddling of the issue arose because in those situations where fees have been awarded,

the Courts have failed to expressly clarify the rule, which we undertake to do today. Accordingly, we hold that in order for unsuccessful contestants to be awarded fees a showing of probable cause plus exceptional circumstances must be made. Further, as indicated in our earlier analysis, we deem that actions "benefitting an estate" or those involving a losing defense on appeal, after a will has been refused probate upon challenge below, fall within that exceptional class of cases.[5] However, the determination of whether exceptional circumstances may exist is to be made on a case-by-case basis and is no way limited to the two exceptional circumstances we expressly note.

■ Turning to the factual situation presented to us to determine whether exceptional circumstances are present, we note that the petitioners were not successful in their will contest. More importantly, their action cannot be viewed as in any way benefitting the estate. In fact, allowance of attorney fees in this case would not only fail to benefit the estate, it would result in a net loss of over one-half the residuary estate when coupled with the respondents' expenses in defending against petitioners' claim. Therefore, if petitioners are entitled to recover their counsel fees, we must look to whether other circumstances as equally exceptional as having benefitted the estate or having lost defending an appeal taken from a refusal to probate a will can be gleaned from the facts.

The record as a whole indicated that the testatrix did not disinherit a blood relative in favor of a stranger, she did not materially alter a prior testamentary scheme, and she did not receive legal advice at any

---

4. For another example of what would be considered a benefit to the estate, see *In re Schikowsky's Estate,* 155 Kan. 815, 130 P.2d 598 (1942) where the Court held that it was error on the part of the Trial Court to refuse to award counsel fees to the unsuccessful contestant in that the contest was beneficial to the estate since it resulted in establishing the validity of a trust created under the Will in question.

5. Cf, *In re Loves Estate,* 136 Neb. 458, 286 N.W.2d 381 (1939) (fees denied to will contestant where then was no showing of special circumstances indicating that the estate was in anyway benefitted).

stage that could be considered other than independent. While each of these circumstances if found to be to the contrary might qualify as being exceptional, the fact that they are not to the contrary means simply that the evidence presented is insufficient to satisfy the second prong of our rule requiring a showing of exceptional circumstances.

Further, neither the petitioners misplaced reliance on *Bandurski, supra,* in reference to burden of proof nor their "Herculean effort to develop their case for trial" can be deemed exceptional. First, while reasonable reliance on a given precedent might bring an action within our exceptional circumstance guideline, reliance on a precedent of questionable validity, in that the legal precedent therein has been distinguished by subsequent cases thereby lessening its vitality, does not qualify as such. Second, the fact that contestant's counsel meets the minimum professional obligation not to go to trial without evidence or makes a demanding effort to prepare the case for trial does not elevate that assumed responsibility to the level of being exceptional.

The rule we adopt today leads us to conclude that the Trial Judge erred in awarding attorney fees to petitioners under the instant facts in that we fail to find exceptional circumstances to satisfy the second prong of the test set forth. Having failed to make such a finding, we see no need to consider whether there was in fact probable cause to contest the Will or whether the petitioners had made out a prima facie case because both situations go only to the satisfaction of the test's first prong leaving a showing of exceptional circumstances still wanting.

## IV

A final aspect of this matter before the Court is whether petitioners are entitled to the award of costs in the amount of $19,419.97 incurred by them in their unsuccessful contest of the Will in question. Since we find that the same standard which applies to the award of attorney fees to an unsuccessful contestant governs an award of any other costs to that contestant, we likewise reverse as to that aspect of the judgment of the Trial Court.

Initially, we turn our attention to 10 *Del.C.* § 5106, which provides that "The Court of Chancery shall make such order concerning costs in every case as is agreeable to equity". It is petitioners' contention that the Court did not abuse its discretion in making the costs award based on this code provision. We disagree.

The discretion of the Court of Chancery with respect to the taxing of costs is a legal distinction "to be exercised, not capriciously or arbitrarily, but in furtherance of justice; and keeping in mind that costs are considered as allowances made to reimburse the *successful* party for his expense necessarily ... incurred." *Kennedy v. Emerald Coal,* Del.Ch., 30 A.2d 269 (1943), citing *Peyton v. Peyton,* Del.Supr., 8 A.2d 89, 92 (1939) (emphasis added). Considering that standard and bearing in mind that in reality such an award as here, paid out of the residuary estate, really comes out of the pocket of the residuary estate beneficiaries who have already suffered the costs of defending the contest, the award of nearly $20,000 in costs to the *losing* contestant is plainly inequitable as well as unprecedented. Even an award for court costs alone, which in this case amounted to $165.63 of the total costs figure, would be unjustified since petitioners were the losing party. As to the other costs, there is simply no prior case law justifying a cost award to a successful party other than certain types where a "compelling special equity" is shown. *Hutchinson v. Fish Engineering Corporation,* Del.Ch., 204 A.2d 752, 753 (1964) aff'd, Del.Supr., 213 A.2d 447 (1965). However, the failure to establish an exceptional circumstance surely does not qualify as a "compelling special equity". Therefore, 10 *Del.C.* § 5106 provides no basis upon which the Trial Court could have justifiably awarded petitioners their costs.

We now turn to petitioners' contention that *In re Warrington's Will, supra,* on which we began our analysis of the standard to apply in determining whether an award of attorney fees is justified, permits an award of costs when the first prong's requirement of reasonable grounds/probable cause is established. Based on this position, petitioners assert that they should be awarded costs in that the Trial Court "found as a fact that there were reasonable grounds/probable cause for petitioners' contest." While we agree that such an interpretation of *Warrington's Will* permits such a result, that construction of *Warrington* as far as costs are concerned is simply unattainable. Therefore, petitioners' argument fails.

The Court in *Warrington* denied attorney fees, but awarded the losing contestants the sum of $250 "to meet and defray their expenses" *Id.* at 501–502. As we found during our analysis of *Warrington,* that Court disregarded any determination of whether probable cause existed due to the fact that it had already determined exceptional circumstances to be lacking. Therefore, *Warrington* provides no guidance as to the basis for its award of costs as petitioners would have us believe. The only possible justification we can arrive at is that the Court there believed it to be equitable to so award costs. But, as we have already pointed out under our view of 10 *Del.C.* § 5106, it is our conclusion that awarding nearly $20,000 in cash to the losing contestant here is inequitable.

As to *Rodney v. Burton, supra,* awarding costs to an unsuccessful contestant under a similar interpretation of *Warrington* to that petitioner would have us follow, we find that the *Rodney* Court's reliance on *Warrington* was simply misplaced. So misplaced, that as respondents correctly point out, the later cases adopted in our analysis apply the standard that we set out today. Simply put, that standard is that costs in general should not be awarded an unsuccessful will contestant in the absence of probable cause plus exceptional circumstances. So viewed, we likewise see no need to determine as to this aspect of the case whether the Trial Court's finding of reasonable ground to bring the will contest is sound.

For the foregoing reasons the judgment sustaining the validity of the Will is AFFIRMED, and the judgment awarding attorney fees and costs to petitioners for their unsuccessful attempt to invalidate the testatrix's Will is REVERSED.